IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RYAN THOMAS MOORE, )
)
    Plaintiff, )
)
vs. ) Civil Action No. 14-258
)
CAROLYN W. COLVIN, ACTING )
COMMISSIONER OF SOCIAL SECURITY, )
)
)
    Defendant. )

AMBROSE, Senior District Judge

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. (Docket Nos. 16 and 22). Both parties have filed Briefs in Support of their Motions. (Docket Nos. 17 and 23). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am granting in part and denying in part both motions for summary judgment.

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). On or about January 26, 2011, Plaintiff applied for DIB. (R. 53, 130-31, 145). In his application, he alleged that since December 1, 2010, he had been disabled due to anxiety, depression, and arthritis. Id. His date last insured is December 31, 2011. (R. 53). The state agency denied his claims initially, and he requested an administrative hearing. (R. 66-70). Administrative Law Judge ("ALJ") William J. Bezego held a

1

hearing on September 25, 2012, at which Plaintiff was represented by counsel. [ECF No. 12, R. 448-486]. Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. (R. 479-483). In a decision dated October 19, 2012, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. (R. 11-20). Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on December 31, 2013, the Appeals Council denied Plaintiff's request for review. (R. 1-3). Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. (Docket Nos. 16 and 22). The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

## B. WHETHER THE ALJ FAILED TO PROPERLY EVALUATE THE OPINIONS OF PLAINTIFF'S TREATING PSYCHIATRIST

The ALJ found that Plaintiff had severe impairments, including degenerative disc disease of the cervical and lumbar regions; fibromyalgia; right knee pain with status post multiple surgeries; a bipolar disorder; and anxiety. (R. 13). He then found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.FR. Part 404, Subpart P, Appendix 1. (R. 13-15). The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that he should be afforded the opportunity to sit or stand at his discretion and was limited to low stress work, which was defined as requiring only routine, repetitive tasks with only occasional judgment, decision-making, and changes; and only occasional interaction with co-workers, supervisors, and the public. (R. 15). The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled within the meaning of the Act. (R. 19-20).

Plaintiff argues the ALJ's findings are deficient because he did not appropriately evaluate the opinions of treating psychiatrist Dr. Leathers. Pl.'s Br. [ECF No. 17] at 14-20. Specifically, Plaintiff argues that the ALJ erred in discounting Dr. Leathers' opinion set forth in the Psychiatric Review Technique Form he completed on January 19, 2012, in which he checked off boxes indicating, that, due to his impairments, Plaintiff met Listings 12.02 and 12.04. Pl.'s Br. [ECF No. 16] at 14-20 (citing R. 304-317, Ex. B12F). In rating Plaintiff's functional limitations on the form, Dr. Leathers found that Plaintiff had marked restrictions of activities of daily living; marked difficulties in maintaining social functioning; extreme difficulties in maintaining concentration, persistence, or pace; and four or more episodes of decompensation, each of extended duration.

(R. 314-315). After careful review of the record, applicable regulations, and relevant case law, I agree that the ALJ erred insofar as he failed to obtain a consultative examination of Plaintiff and/or consider whether Plaintiff's failure to appear for two consultative examinations was grounds for dismissal.

The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 404.1527(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. Id. § 404.1527(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 404.1527(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

"A cardinal principle guiding disability determinations is that the ALJ accord

> treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Social Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." See 20 C.F.R. § 404.1527(d)(1), (3); Dixon v. Comm'r of Social Security, 183 F. App'x 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Security, 529 F.3d 198, 203-04 (3d Cir. 2008).

Here, the ALJ rejected Dr. Leathers' January 2012 assessment because he found it was inconsistent with the totality of the record, including Dr. Leathers' own clinical findings. (R. 15, 18). These are appropriate reasons for declining to give a treating physician's opinion controlling weight. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); 20 C.F.R. § 404.1527. After review

6

of Dr. Leathers' treatment notes, I agree that nothing therein supports the marked and extreme limitations he checked off on the PRT Form. I also agree that the record does not reflect any relevant episodes of decompensation of extended duration, let alone four or more such episodes as Dr. Leathers checked on the form. If anything, the record supports the ALJ's finding that Dr. Leathers' opinions on the PRT Form are inconsistent with the medical evidence including Dr. Leathers' own clinical findings. For example, the ALJ cited records showing that when Dr. Leathers began treating Plaintiff in March 2011, a mental status examination was satisfactory and Plaintiff's GAF score was 55, reflecting only moderate limitations.[1] See R. 18 (citing Ex. B16F). The records reflect conservative treatment for Plaintiff's mental health impairments, and when Plaintiff transferred from Dr. Leathers' care in April 2012, Dr. Leathers noted Plaintiff had been successful with his detoxification and rehabilitation programs, was stable on his medications, and no longer needed the medication Klonopin. Id. The ALJ also cited the treatment notes of Dr. Fraser who became Plaintiff's caregiver in 2012 after Dr. Leathers in support of his findings. Dr. Fraser noted Plaintiff's GAF score as 60 as of August 2012, with Plaintiff reporting continued sobriety and attendance at AA meetings. Dr. Fraser noted that Plaintiff appeared to be bright and friendly, and his mental status examination was unremarkable. Id. (citing Ex. B16F). Dr. Fraser stated that Plaintiff continued to remain mentally stable through the period shortly before the administrative hearing. Id. (citing Ex. B20F).

Although the ALJ properly documented the weaknesses inherent in Dr. Leathers' findings, he failed to support with substantial evidence his own contrary findings regarding Plaintiff's functional limitations stemming from his mental health impairments. Thus, although the ALJ's

---

[1] The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003). A GAF from 51-60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Id.

7

reasons for declining to afford Dr. Leathers' opinion controlling weight are sound, there is insufficient contrary medical evidence to support the ALJ's Step 3 or Step 4 findings on the record as it currently stands. The only other medical evidence the ALJ cites in support of his findings are Dr. Fraser's records which he affords "more weight." As set forth above, Dr. Fraser treated Plaintiff subsequent to Dr. Leathers for his mental health impairments, and her treatment notes are inconsistent with the marked and extreme limitations Dr. Leathers found. Those treatment notes, however, also indicate that Dr. Fraser does not screen for the specific criteria required by the social security forms. See R. 442-442 [ECF No. 6-12]. Specifically, Dr. Fraser stated that "Patient requests documentation about his illness for SSD paperwork. I informed him that I sent the requested documents but could not write a letter as there are specific criteria for SSD which I do not screen for in patients. I told him that the lawyer may suggest an independent examiner." Id. The ALJ also claimed that the state agency medical consultants who reviewed the case for purposes of the initial determination assessed that Plaintiff's mental conditions did not fulfill the requirements of the Listings. See R. 15 (citing Ex. B1A). As Plaintiff correctly notes, however, the non-examining state agency physician did not make any determination regarding Plaintiff's mental health. Rather, the physician stated that there was insufficient evidence to reach any conclusion regarding the relevant Listing criteria and that "[a]dditional evidence is needed in order to appropriately evaluate the claimant's functional restrictions." R. 56-58 [ECF No. 6-3]. Indeed, the Administration twice ordered Plaintiff to attend a consultative exam, but he failed to report to either appointment. Id.

The decision to order a consultative examination is within the sound discretion of the ALJ. Thompson v. Halter, 45 F. App'x 146, 149 (3d Cir. 2002); 20 C.F.R. § 404.1517. An ALJ's "duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." Id.

8

Other circumstances necessitating a consultative examination include situations where a claimant's medical records do not contain needed additional evidence, or when the ALJ needs to resolve a conflict, inconsistency, or ambiguity in the record. See 20 C.F.R. § 404.1519(a). For the reasons set forth above, I find that a consultative examination as to Plaintiff's mental limitations is necessary to make a disability determination in this case. Therefore, I remand this case so that the ALJ may order a mental consultative examination of Plaintiff. The ALJ then must determine what weight to assign to the results of that examination and to Dr. Leathers' PRT Form, as well as any other relevant medical evidence, fully explaining the underlying analysis. After considering all medical evidence of record related to Plaintiff's mental impairments, the ALJ must decide whether his analysis regarding the Listings should change and/or the RFC should be reformulated to address additional (or fewer) mental limitations. See Powers v. Colvin, Civil Action No. 2:14-1570, 2015 WL 4566920, at *8 (W.D. Pa. July 29, 2015).[2]

### III. CONCLUSION

Under the Social Security regulations, a federal district court reviewing the decision of the Commissioner denying benefits has three options. It may affirm the decision, reverse the decision and award benefits directly to a claimant, or remand the matter to the Commissioner for further consideration. 42 U.S.C. § 405(g) (sentence four). In light of an objective review of all evidence contained in the record, I find that although some aspects of the ALJ's decision are supported by substantial evidence, the ALJ erred in failing to obtain a consultative examination as to Plaintiff's mental health impairments. The case therefore is remanded on this limited issue so that the ALJ may order a consultative mental health examination in light of this Opinion and

---

[2] Although Plaintiff failed to appear at both consultative examinations previously ordered below, the ALJ did not mention these failures or rely on them in formulating his opinion. If Plaintiff again fails to appear, however, without offering good cause for so doing, the ALJ may find that he is not disabled on that basis, provided that he explains this reasoning in his opinion. See 20 C.F.R. § 404.1518.

9

reevaluate Plaintiff's claim as necessary.[3]  For these and all of the above reasons, Plaintiff's Motion for Summary Judgment is granted to the extent set forth herein, and Defendant's Motion for Summary Judgment is denied to that same extent.   An appropriate Order follows.

---

[3] Plaintiff has not challenged the ALJ's findings regarding his physical impairments.   Thus, my remand order pertains only to Plaintiff's mental impairments.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RYAN THOMAS MOORE,

    Plaintiff,

vs.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action No. 14-258

AMBROSE, Senior District Judge

## ORDER OF COURT

AND NOW, this 6th day of October, 2015, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 16) is GRANTED in part, and the matter is REMANDED to the Commissioner for further proceedings consistent with the Opinion attached hereto. Defendant's Motion for Summary Judgment (Docket No. 22) is GRANTED in part and DENIED in part to the extent set forth in the Opinion attached hereto.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. Senior District Judge